The next case to be argued is Get Kaisered Inc et al. v. AKT Franchise et al. We have Attorney Garner appearing by Zoom. Mr. Garner? May it please the Court, my name is Brian Garner. I represent AKT Franchise, that's Anakaiser Technique Franchise. I'd like to reserve three minutes for rebuttal. Granted. This is an unusual case of contractual interpretation because there are nine canons of construction that come into play and they all point in the same direction. Before you get into the canons themselves, I just want to clarify one matter that has some significance here, and that is in your briefs, I don't believe you've argued that either the APA generally or Section 5.11a are specific, specifically are ambiguous. So let me just assure myself of this. Is the relevant contractual language here for our purposes ambiguous or is it not? Because my understanding is that your co-counsel conceded a lack of ambiguity in the PI hearing before Judge Connolly. Your Honor, we do not believe it to be ambiguous. Thank you. And just to go straight to the linchpin of the case, in two contracts, an asset purchase agreement and an allied consulting agreement, Anna Kaiser and Get Kaiser assigned intellectual property to AKT Franchise. Under the consulting agreement, she irrevocably assigned all the work product, all the intellectual property that she might develop between March 2018 and March of this year. Three times in one clause, Anna Kaiser explicitly waived any right to assert an interest in the work product she might develop during that period. In the words of the agreement, her work product, quote, belongs to AKT upon creation. She assigned it and received more than $2.1 million in exchange. But barely two years into that three-year assignment and into the five-year noncompete agreement, she asserted ownership of what she had assigned, tried to start a new business under her name and likeness, and went into open and notorious competition against AKT. That's not the way IP assignments work in this circuit or in any other. Because it violates the whole text canon and several other canons and the defined terms in the agreement itself, as well as settled intellectual property law, this court should reverse the trial court's judgment and reverse with instructions to enter a preliminary injunction. As for the defined terms, it's an interesting sort of embedded defined term because sellers, studios, it means current studios plus additional studios, so there are no additional studios, never were, and current studios and seller studios are essentially synonymous, but those two terms do appear. The meaning of seller studios is straightforward. It's defined in Section 511A, the very section Your Honor just cited, as the current AKT in motion studio. So the branding, the intellectual property, AKT in motion, is part of the definition. Both Gett-Kaiser and the district court treated the language as if it referred only to physical location, but the assigned trademark, the branding, AKT in motion, is part of the definition. Despite that definition, Gett-Kaiser argues that Anna Kaiser can operate any kind of studio she wants to out of those locations. That's quite wrong. It has to be a branded AKT in motion studio by definition, as it was when Anna Kaiser signed the agreement. If Gett-Kaiser were right in this matter, Anna Kaiser could have begun competing against AKT using her seller studios on day one, before the ink was dry. Despite the non-competes, there are two non-competition agreements. Despite the assignment of intellectual property and having just received $2.15 million. So the argument of Gett-Kaiser is essentially that AKT bargained for one of two results. It paid up front more than $2.1 million for the possibility that she would operate as a franchise, or the other possibility, which would say the documents clearly foreclose, which is that she could operate in direct competition against AKT. As for the whole text canon, that guide definitively supports our reading, as we've shown in the briefs. And the contracts use the phrase seller studios in a way that makes sense only if they are run as franchises. The carve-out needs to be read harmoniously with the other provisions. The carve-out, that is in Section 5.4, in the non-competition agreement, when it says seller studios are not to be considered competing studios, that was to protect Anna Kaiser. That was also to protect the very text itself from being self-contradictory. Because 5.11a contemplates that she will continue operating those current studios. We couldn't have the franchise agreements simultaneous with the asset purchase agreement, the consulting agreement, because we were awaiting state approvals before the franchisor could even offer any franchises at that time. So she was essentially operating initially as a de facto franchise. There's a very nice little chart on page 12 of our initial brief showing exactly what was contemplated. First, she's operating as a franchise until written agreements are signed. If the parties hadn't included that carve-out, by eliminating seller studios from the definition of competing businesses, and again, remember that the brand is part of the definition, AKT in motion, the asset purchase agreement would have been self-contradictory and she herself would have been in some jeopardy for violating the agreement that she just signed. Some examples of provisions that would make no sense if GetKaiser's counter-textual reading were correct. First item, in the consulting agreement, section 1.3, Anna Kaiser is contractually bound to devote substantially all her professional time to seller studios. That would make no sense if the seller studios were operating other than as a franchise. Under 5.11c, so all of 5.11 needs to be looked at, Anna Kaiser and GetKaiser are required to keep extensive financial records for the benefit of AKT. They are required to pay royalties on seller studios to AKT. Under section 5.6, the restrictive covenants were specifically to protect AKT for the benefit of its bargain. So when you take these waivers, and by the way, since I mentioned all those canons of construction, let me just go through the list quickly. Counsel, can I just ask a question before you begin real quick? On your intellectual property argument that it's limited to AKT and motion studios, how do the additional studios under 5.11a also need to be AKT and motion studios? Because it doesn't seem to speak to that point. It just defines them as additional studios. So could they be anything? Yes, Your Honor. They would be – they were hypothetical studios and, in fact, never came about, but they would need to be run as franchises as well. Yes, Your Honor. Would they need to be run as AKT and motion studios, or could they be named as anything as long as they were franchises in your interpretation? The parties contemplated that the franchise agreements would be signed, you know, within some period of time, gave three years. Yes, AKT and motion studios, that was the original brand that AKT purchased. But, remember, AKT actually owned all the intellectual property that Anakaiser might develop through March of this year. So, technically, AKT owns the brand GetKaiser, and all the current branding, or at least all the branding through March of 2021, that Anakaiser and GetKaiser had developed. There was an assignment. Mr. Gunner, let me interrupt on a matter for the information of both the panel and the court crier. You reserved three minutes for rebuttal, did you not? I did, yes. Yeah, I don't think we gave Mr. Gunner sufficient time. I don't think we began with 12 minutes is what I'm saying. Yeah, I don't think we started with 12. But if you put five minutes on the clock, please, for him. Thank you. Mr. Garner, I'm having trouble getting over the fact that in 5.4, the seller studios specifically are carved out of the definition of competing business. How do you get them back in? Your Honor, the mere fact that the phrase seller studios appears there, we have to look at the definition of seller studios. How are they defined? It is a mid-sentence parenthetical that defines current studios, and current, and therefore seller. But current studios, or seller studios, are defined as her current AKT InMotion Studios. The brand is a very part of the definition. Also, in Section 5.11a, it says that seller studios are to be run, that she shall cause them to be franchises of AKT. So these clauses fit together very nicely. Except you went into the district court and tried to get her enjoined on operating a business without her intellectual property after the franchising agreements apparently fell aside the way. I don't know in light of 5.4 how you pull her back in, because she's out there working without her intellectual property, which she already assigned under the Asset Purchase Agreement. And I'm not sure what she's doing under those new structures. But if she's not violating the Asset Purchase Agreement on utilizing the intellectual property, how can you stop her from working? Your Honor, the non-compete extends for five years. She cannot compete except… Except you took her out of that. I mean, 5.4, it seems to me, took her out of that. And you're trying to make an argument, and I understand what you're trying to do, but you're trying to make an argument to get her back in. And I'm just not grasping that that definition of seller studios is enough to get her back in. The very words of the definition itself, the text itself, the plain meaning of current AKT in motion studios, the brand is part of the definition. The brand is what she sold. But also, Your Honor, Judge Fischer, she's two years into a three-year requirement to negotiate, in good faith, for those franchise agreements, and she has assigned. Remember, there's a three-year assignment of all intellectual property that she might develop. What she ended up doing in August of last year was trying to rebrand herself, in other words, create new intellectual property using our customer list that she had already assigned and actually using AKT in motion letterhead to solicit, in violation of still another provision of the contract, for her newly branded new and better intellectual property, which we own. But the important thing to keep in mind is that the very definition itself includes the brand. The intellectual property is part of the definition, current AKT in motion studios. Judge Fischer, we submit that seller studios does not refer to a physical location merely, bricks and mortar at a certain address. It includes the trademark by its very terms, and there's no stretching of words there. It's embedded in the words of the definition. So you're essentially saying for five years, for a period of five years, for the $2.1 million that you paid her up front, she cannot operate in the personal training business no matter under what creation she's operating under. Your Honor, that is the bargain that she struck. That's essentially what you're saying, that for $2.1 million, regardless of whether these franchises ever came to fruition, you put her on ice for five years. Your Honor, yes. That is the only way that. Does that bargain make any economic sense objectively? I'm sorry, Your Honor? Does that bargain make any economic sense objectively? I believe it does, Your Honor. It's $2.1 million up front, plus there are some cash payouts. There are some arguments about the payouts, and especially that first one, how it was to be applied to keep from diminishing her stock, which she received in the new enterprise. But to get an embryonic franchisor off the ground, you have to, you absolutely have to have exclusivity. That's what intellectual property is all about, is exclusivity. And, again, the non-compete assumes that she's going to work as a franchise and be part of a team, work as a franchisee. I mean, the mere fact that two years into that, she gave that up and started trying to compete and went rogue, that is not an economic sense that should be held against APT. Do you have further questions? We'll have you back on rebuttal, Mr. Garner. Thank you. Thank you. Ms. Brennan. May it please the Court, my name is Carrie Brennan, and I represent the appellees Get Kaiser, Kaiser Fitness, and Anna Kaiser. Appellees respectfully request that this Court affirm the District Court's ruling denying AKT Franchises and Exponentials' motion for a preliminary injunction in joining the operation of Get Kaiser's Anna Kaiser Studios. Ms. Kaiser commenced this lawsuit because of the serial material breaches of the asset purchase agreement. Before we jump into the covenant not to compete, I think we need to look at what kind of agreement this is. It was an asset purchase agreement. What was transferred here? It was the IP, it was the right to create a franchise from the IP, and it was a limited license to Ms. Kaiser's persona. Nowhere in this agreement were Ms. Kaiser's studios transferred to AKT Franchise, nor did they get any control over her studios. There is no clause in the agreement by which at any time she was going to have to close those studios. In fact, in Section 5.11, it provided that the parties were to use commercially reasonable efforts to negotiate franchise agreements, but it did foresee an outcome that those agreements might not be signed, and in the event that they were not signed, Ms. Kaiser would not have a license to use the intellectual property any longer. That was the consequence if they did not sign franchise agreements. So it was also anticipated that the studios might not become franchisees. Also, we need to look at what happened on Day 1 after the asset purchase agreement was signed. AKT Franchise was only formed about two weeks before the asset purchase agreement was signed. It was formed for the purpose of entering this agreement. There was no franchise system. There was no franchise agreement. There was no model franchise studio. Those were all to be developed. And as we have pointed out, later that year, towards the end of the year, AKT Franchise filed a franchise disclosure document with a form franchise agreement, which was approved later in 2019. In their own franchise disclosure document, they described the studios as studios using the intellectual property and that they expected that franchise agreements would be entered. But they do not describe the studios as franchisees in the franchise disclosure document. Now, turning to the covenant not to compete, there's an express exclusion in this covenant not to compete. I know in their brief, AKT Franchise relies on two cases, Arch Personal Care and Centennial Broadcasting. Those are not the same as what happened here. There's a specific exclusion from the covenant not to compete here, which says other than Cellar Studios. Mr. Garner has conceded that Cellar Studios is defined in Section 511A and that it's straightforward. It is the current studios and the additional studios. No additional studios were opened. And there is restraint under this covenant not to compete because assuming the covenant not to compete is enforceable and it's our position that the covenant not to compete is not enforceable because of all the material breaches of nonpayment and the requirement that Ms. Kaiser agreed to a dilution of her profit interest in AKT Franchise, which is not in the asset purchase agreement. Assuming the covenant not to compete is enforceable, she cannot open up any new studios between now and 2023. So there is a restraint in the covenant not to compete if it's enforceable. But what can she do in her quote Cellar Studios during the remaining part of the five year period? She can develop new choreography. She can use and develop new trademarks. And she can operate those studios. Mr. Garner said something that I think is... Yeah, but how can she do that? I mean you talked about this in persona, the grant of her in persona intellectual property. Can she run these studios with other fitness trainers? She's using the same trainers that she used that were her employees. Okay. And they had been her employees since some of them... So she's using them with new trademarks. Yes. And new dances. They do new dances every three weeks. Okay. So it's new choreography. Is she precluded from participating in the choreography of the dances?  She, Ms. Kaiser, is the one who actually creates all the choreography. Mr. Garner's statement that they own all the intellectual property for three years is not correct under the consulting agreement. The consulting agreement provided for monthly payments. They stopped paying the consulting agreement twice. Once in the fall of 2019 and then again in April 2020. GetKaiser and Ms. Kaiser sent a notice of breach in June 23, 2020. Said, you're not paying me. I don't need to comply with this consulting agreement. They did not respond at all. We then sent a notice of termination under the consulting agreement on July 27, 2020. And the following week we filed the lawsuit. So they didn't own the intellectual property that they weren't paying for. And she properly terminated the consulting agreement under its own terms. So his statement that they continued to own her intellectual property newly created after she terminated the agreement for breach is incorrect. What if it was correct? Excuse me? What if that statement was correct? What would that mean as to her ability to perform five years from the time of the original agreements? If the statement was correct that they were bound to, that they owned her intellectual property. Right. I can't conceive of a basis on which that would be valid. I do think in that circumstances she would not be able to create new choreography. Or she'd have to turn it over to them. Right. Either one of those. But given that she terminated the consulting agreement for failure of AKT Franchise to pay her. I don't see how they could own newly created intellectual property. We're here on an appeal from the denial of a grant for a preliminary injunction or a request for a preliminary injunction. What's our standard here? What are we looking at? Well, I think what we're looking at is that... Yes. And I do not believe they can succeed on the merits of the case because of the covenant not to compete. If they cannot succeed on that clause and if you have to read that clause in combination, that's in Section 5.4, you have to read that clause in combination with Section 5.11. Mr. Garner himself has conceded that the definition of seller studios is straightforward. That it constitutes the current studios, the additional studios. What AKT Franchise tries to suggest, which I do think is inconsistent with the agreement, is somehow that those studios were clothed with intellectual property. And that is not what the agreement says. Moreover, Mr. Garner did not discuss it, but I think one of the heart of their brief is that there is an affirmative obligation in the agreement that the studios were required to act as franchisees. And going back to what I said earlier, in the context of this agreement, there was no franchise system that existed as of day one. No franchise agreement had been executed. There is no language in the asset purchase agreement which says that the studios became franchisees before a franchise agreement was signed. In addition, I think if you look at the Section 5.11 in the agreement, Section 5.11 is captioned Franchise Agreements, Franchisee Rights, and Royalties. 5.11A deals with the franchise agreement. 5.11B deals with certain franchisee rights. And 5.11C deals with royalties. If you look at 5.11A, the first sentence in 5.11A is essentially a license. And it is the license that was anticipated to be in the franchise agreement. The very next sentence says, following the closing, the purchaser and seller shall use commercially reasonable efforts to enter written franchise agreements for the seller of studios not materially inconsistent with the terms of this section. That sentence goes right below the license, the license that would have been in the franchise agreement. Mr. Garner's argument in his brief somehow is that you should ignore the provided that language in the second half of the first sentence. And that you should read that provided that clause to be an affirmative obligation. Now, that argument, which really is the center argument of their brief, is contrary to Delaware law, which says that you read that provided that phrase as a condition. In addition, all of the treatises on this, including Mr. Garner's own treatise, he referred to all of these canons just earlier, these ten canons or more. But in his own dictionary, and in the treatise that he wrote with Judge Scalia, he specifically said for the proviso canon, expressly states that a proviso modifies the preceding language. He didn't cite in his briefs to this court the very canon that applies to this agreement and just refers to other canons. And I think it speaks volumes that he did not cite the exact canon that applies in this case. And so, moreover, Delaware law is consistent with his treatise, as is Wilson on contracts. So we believe that his argument that there's an affirmative obligation for the studios to act as franchisees is nowhere in this agreement. And if there are any other questions I could answer to the court about this agreement, I would be happy to do so. Judge Fischer. Thank you very much. Thank you. Mr. Garner, we'll have you back on rebuttal. Three points, Your Honor. In response to Judge Mady's question about additional studios and whether they have to be franchises, Section 511A does explicitly say that it shall be subject to purchasers, that is, AKT's reasonable quality control oversight instructions and requests. That, it seems to me, is dispositive of the point whether they have to be franchises. On Judge Fischer's question, Judge Fischer is asked about the meaning of seller studios and whether I consider the document the panel wants to know unambiguous. We've said we do believe it's unambiguous. But our worst case, our very worst case, if there's any question about the meaning of seller studios, is that it is ambiguous. And in that case, there is a case written by Judge Norman Veazey, Chief Justice Veazey of Delaware in 1997 called Eagle Industries, in which the trial court tried to read out of a contract the proviso. And Chief Justice Veazey and the court said, no, you can't read out the proviso. It's ambiguous, and so we should look at extrinsic evidence. So it does seem to me that AKT's worst case is that it's ambiguous, regardless of what I say. I think it's unambiguous. But if it were ambiguous, as the district judge said here, the parole evidence is overwhelming that all her studios were to be run as franchises. Finally, my friend, Ms. Brennan, speaks as if there has been a rescission of the contract. In fact, there is a termination provision, 1.2, in the consulting agreement, but an explicit survival clause, a survival clause for the non-compete, a survival clause for the non-solicitation. There is no termination provision allowable under the asset purchase agreement. A termination is acceptable only if signed by both parties. So the notice of termination that my client received in August of last year is simply ineffective, and it certainly does not amount to a rescission that makes somehow Anna Kaiser and Get Kaiser not bound to the three-year assignment of all intellectual property that she developed, effectively assigned to AKT. Are there any further questions? Thank you very much, Mr. Garner. And thank you, Ms. Brennan. We will take the case under advisement, and I will ask the crier to close the proceedings. Thank you.